Electronically Filed 10/23/2013 04:11:56 PM ET

IN THE CIRCUIT COURT OF THE NINTH
JUDICIAL CIRCUIT IN AND FOR ORANGE
COUNTY, FLORIDA

CASE NO. 2010-CA-16894; Div. 43
COMPLEX BUSINESS LITIGATION COURT

MIKE FOGEL, DANNY ANDERSON, BRIAN
BUCKLEY, JEREMY BURR, RICK
DALRYMPLE, INSURANCE OFFICE OF
AMERICA, INC.; JEFF LAGOS, JOHN S.
LAHEY, MARY LAWLESS, MARK MANFRE,
ROD MORTON, HERMAN PEERY, DALE S.
PERRY, HEATH RITENOUR, JOHN K.
RITENOUR, RTRM, LLC; THOMAS SCALISE,
WESLEY D. SCOVANNER, JERRY
SENKARIK, KEITH SUTTON, MICHAEL
SUTTON, and TAJS INVESTMENTS, LLC,

       Plaintiffs,

v.

JOHN G. SQUIRES, GREY SQUIRES
BINFORD, ANTHONY R. GRAY and
ROBERT FERRIS,

       Defendants.

_____

## FIRST AMENDED COMPLAINT AND DEMAND FOR JURY TRIAL[1]

Plaintiffs, MIKE FOGEL, DANNY ANDERSON, BRIAN BUCKLEY, JEREMY

BURR, RICK DALRYMPLE, INSURANCE OFFICE OF AMERICA, INC.; JEFF LAGOS,

JOHN S. LAHEY, MARY LAWLESS, MARK MANFRE, ROD MORTON, HERMAN

PEERY, DALE S. PERRY, HEATH RITENOUR, JOHN K. RITENOUR, RTRM, LLC;

THOMAS SCALISE, WESLEY D. SCOVANNER, JERRY SENKARIK, KEITH SUTTON,

MICHAEL SUTTON, and TAJS INVESTMENTS, LLC (collectively, "Plaintiffs"), file this

---

[1] This First Amended Complaint is filed in accordance with this Court's November 4, 2010 Order on
Motion to Dismiss, which dismissed Count III of the original Complaint with leave to file this
amendment.

Exhibit "B"

eFiled in the Office of Clerk of Court, Orange County Florida 2010 Nov 12 10:24 AM Lydia Gardner

First Amended Complaint and sue Defendants, JOHN G. SQUIRES, GREY SQUIRES BINFORD, ANTHONY R. GRAY, and ROBERT FERRIS (collectively, "Defendants"), and allege:

## INTRODUCTION

1.      This action seeks to recover damages for the significant losses caused by Defendants' misrepresentations, omissions, and fraud that led to and caused Plaintiffs' investment in Old Southern Bancorp, a holding company whose main asset was Old Southern Bank, Orlando, Florida, a state-chartered bank that is a member of the Federal Reserve System (Old Southern Bancorp and Old Southern Bank are collectively referred to herein as the "Bank").

2.      In order to convince Plaintiffs to participate in the securities offering and invest money into the Bank, which Defendants knew was already in financial distress at the time that the investment offering was made, Defendants misrepresented or failed to disclose material information to the investor Plaintiffs by, among other things:

        (a)     Failing to disclose to investor Plaintiffs the level of concentration the Bank maintained in problem real estate loans;

        (b)     Failing to disclose to investor Plaintiffs that prior to Defendants' solicitation of Plaintiffs' investment, the high level of concentration in real estate loans had resulted in the FDIC's directing the Bank in writing to reduce its exposure to real estate loans, a document so sensitive and damaging that Defendant Chairman, President, and CEO, Defendant JOHN G. SQUIRES later, when publicly disclosing the letter, had to feign never having received it; and

        (c)     Failing to disclose to investor Plaintiffs the true financial distress that the Bank was in at the time of the securities offering.

3.      As a result of Defendants' misrepresentations and omissions, Plaintiffs invested millions of dollars into a bank that Defendants knew, or had reason to know, was not in sound financial condition.

4.      As a result of Defendants' misrepresentations and omissions, Plaintiffs' investments were exposed to a fiscally unsafe and unsound amount of risk *from inception,* which over the next 18 months directly caused the Bank's condition to deteriorate ultimately to the point of failure under the weight of problem real estate loans, loan write-offs, shrinking capital reserves, and regulatory scrutiny.

5.      On March 12, 2010, the Florida Office of Financial Regulation closed the Bank and appointed the Federal Deposit Insurance Corporation ("FDIC") as receiver.

6.      The Bank became the first Orlando-area community bank to succumb in nearly 20 years and only the second since the Great Depression.

7.      The Bank's investors, including Plaintiffs, lost millions in the Bank's demise.

## THE PARTIES

8.      Plaintiffs are adult individuals or entities who reside or operate in Florida and were investors in the Bank.

9.      Defendant JOHN G. SQUIRES is a resident of Altamonte Springs, Seminole County, Florida, and was the Bank's Chairman, President and CEO until his removal in April 2010.

10.      Defendant GREY SQUIRES BINFORD is the daughter of JOHN G. SQUIRES, a resident of Maitland, Orange County, Florida, and was a Member of the Board of Directors of the Bank until March 19, 2010 when she resigned. She is also an attorney licensed to practice law in the State of Florida.

11.     Defendant ANTHONY R. GRAY is a resident of Winter Park, Orange County, Florida, and was a Member of the Board of Directors of the Bank until his removal in April 2010.

12.     Defendant ROBERT FERRIS is a resident of Altamonte Springs, Seminole County, Florida, was on the Audit Committee of the Bank, and was a Member of the Board of Directors of the Bank until his removal in April 2010.

13.     At all times relevant to this action, Defendants as a group, formally or informally, acted as an Executive Committee for the Board of Directors, directly interacting with the Bank's Chairman, President, and CEO, Defendant JOHN G. SQUIRES, on all material matters.  For example, the Defendants were known to have private meetings in advance of Board meetings to discuss strategies to deal with Bank issues.  Defendant JOHN G. SQUIRES relied on his co-Defendants' advice and counsel to implement Bank policies and strategies.  As key executives to the Banks, Defendants would have been privy to, and active in, the decision-making for the Bank, including the information provided to prospective investors.

## JURISDICTION AND VENUE

14.     This is an action for damages in excess of $15,000.00, exclusive of attorneys' fees and costs.

15.     Jurisdiction over Plaintiffs' claims and venue are proper in this county because a substantial portion of the conduct complained of occurred within this judicial district and because some of the Defendants reside in this county.

16.     All conditions precedent to the bringing of this action have occurred, been performed, or been waived.

17.    Plaintiffs have retained the law firm of Morgan & Morgan, P.A. to prosecute this action and represent their interests with respect to this matter, and are obligated to pay reasonable attorneys' fees and costs for these services. Plaintiffs are entitled to recover their attorneys' fees and costs incurred in this action.

## FACTUAL BACKGROUND AND GENERAL ALLEGATIONS

18.    During the spring/summer of 2007, Defendant JOHN G. SQUIRES, the former Bank Chairman, President and CEO, invited one or more of the Plaintiffs to become investors in an upcoming secondary offering (the "Secondary Offering") for an investment in the Bank, structured to raise approximately $18 Million Dollars as a capital infusion into the Bank.

19.    In connection with the Secondary Offering, Defendants, as Board Members of the Bank, caused a Private Placement Memorandum ("PPM") to be prepared and circulated to potential investors, including Plaintiffs, in the fall of 2007.

20.    At Defendant JOHN G. SQUIRES' behest, Plaintiff John K. Ritenour was encouraged to circulate the PPM in order to induce Plaintiffs to invest in the Bank.

21.    At the time, Defendants represented that no material conditions of a financial nature existed that would require further disclosures to be made in the PPM.

22.    The PPM, it has been discovered, contained inadequate and material misrepresentations and omissions relating to the soundness of the Bank, and the Board Members' (Defendants herein) capabilities with respect to managing the Bank's assets including, among other things:

(a)    Prior to Plaintiffs making their investments in the Bank, Defendants falsely represented that no material conditions of a financial nature existed that would warrant any further disclosures or changes in the PPM;

(b)      While touting their expertise as commercial real estate lenders, Defendants failed to disclose that the Bank was overconcentrated in real estate loans;

(c)      Defendants failed to disclose that, prior to Plaintiffs making their investments in the Bank, the FDIC had ordered the Bank to reduce its exposure to real estate loans. Upon information and belief, Plaintiffs allege that Defendants received a letter the Bank received from the FDIC giving this directive but did not disclose it to investors until several years later. Defendant JOHN G. SQUIRES referred to this letter at a shareholder meeting in February 2010, soon before the Bank was shut down, falsely claiming that he had never seen the letter and attempting to deflect responsibility for not having acted in response to the letter to the former Bank President, Sandra Jansky, who SQUIRES claimed never shared the letter with him. This statement was false as the letter was addressed to, and received by, SQUIRES himself. SQUIRES, and the other Defendants who knew, or should have know of the letter, never acted upon the letter and, more importantly, never apprised Plaintiffs of the letter's existence prior to Plaintiffs' investment in the Bank;

(d)      Defendants failed to disclose that the Bank Board Members voted at the end of 2007 to increase the loan loss allowance by $1,000,000.00 to reflect the deterioration in the general conditions of the market. However, the Bank decided not to implement the increase and decided not to revise the PPM to report either the vote or the Bank's decision. This failure to report the Bank's vote and subsequent decision not to increase the loan loss allowance in the PPM was a material omission;

(e)      Defendants falsely reported a lower loan allowance in the PPM of $1,393,000.00 (or 1.05% of the total amount of the loan portfolio) which constituted a material misrepresentation regarding what the Bank believed was a sufficient loan loss allowance. In

fact, only after Plaintiffs' investments in the Bank did the Bank report of the new loan loss allowance of 1.55% in their 2007 year end financial report, which was not released to the public, or to Plaintiffs, until February 2008;

(f)     Defendants falsely represented in the PPM that that it had only $5.1M in nonperforming loans. This was a single loan for a golf course. In fact, Defendants at least had another series of development loans secured by real estate for another $1.7M that were also nonperforming. These loans were not reported in the PPM; and

(g)     Defendants falsely represented that the remainder of the Bank's loan portfolio was solid with no negative trends and that the Bank was confident that the real estate malaise had not spread to the Bank's portfolio.

23.     The true facts, which were known by Defendants but concealed from the investing public and Plaintiffs, were as follows:

(a)     The Bank's assets contained millions of dollars worth of impaired and risky real estate loans, many of which were backed by real estate that was rapidly dropping in value and for which the Bank had failed to record adequate loan loss reserves;

(b)     Defendants failed to properly account for the Bank's commercial real estate loans and construction and land development loans, failing to reflect impairment in the loans;

(c)     The Bank had not adequately reserved for loan losses; and

(d)     The Bank's capital base was not adequate enough to withstand the significant deterioration in the real estate markets.

24.     As a result of Defendants' misrepresentations and omissions, and in reliance thereon, Plaintiffs collectively invested millions of dollars between October 2007 (when the

PPM was initially circulated) and February 2008 (when the Bank offering closed) into the already failing Bank. See schedule of investments made by Plaintiffs attached hereto as **Schedule "A."**

26. But for Defendants' misrepresentations and omissions Plaintiffs would not have invested their money in the Bank.

## COUNT I
## VIOLATION OF FLORIDA'S SECURITIES AND INVESTOR PROTECTION ACT, § 517.301, FLORIDA STATUTES

26. This is an action against Defendants for damages that exceed $15,000.00 for violation of § 517.301, Florida Statutes.

27. Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 25, above.

28. In connection with Plaintiffs' investment in the Bank, Defendants made untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading.

29. Plaintiffs relied on Defendants' misrepresentations or omissions in making their respective investments in the Bank.

30. As a direct and proximate result of Defendants' acts or omissions, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for compensatory damages, reserving the right to seek punitive damages at a later date upon a proper proffer, prejudgment interest, attorneys' fees, and costs.

## COUNT II
### FRAUD

31.    This is an action against Defendants for damages that exceed $15,000.00 for fraud.

32.    Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 25, above.

33.    Defendants concealed or misrepresented material facts, as described above, in order to induce Plaintiffs' investments.

34.    Defendants knew, or reasonably should have known, that the representations were false or materially misleading.

35.    Plaintiffs reasonably relied upon the representations to their detriment.

36.    As a direct and proximate result of Defendants' acts or omissions, Plaintiffs have been damaged.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for compensatory damages, reserving the right to seek punitive damages at a later date upon a proper proffer, interest, attorneys' fees, and costs.

## COUNT III
### NEGLIGENT MISREPRESENTATION

37.    This is an action against Defendants for damages that exceed $15,000.00 for negligent misrepresentation.

38.    Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 25, above.

39.    Defendants made material representations to Plaintiffs to attract Plaintiffs' investment in the Bank, which Plaintiffs believed to be true, as represented by Defendants, but which were in fact false, as more fully described above at ¶¶ 2-4, 21-23.

40.    Defendants were negligent in making these representations because they should have known that the representations were false.

41.    Defendants intended to induce Plaintiffs to rely on the misrepresentation and Plaintiffs did justifiably rely thereon, as more fully described at ¶¶ 20, 24-25.

42.    As a direct, foreseeable, and proximate result of Defendants' negligent misrepresentations, Plaintiffs have been damaged.

**WHEREFORE**, Plaintiffs demand judgment against Defendants for compensatory damages, prejudgment interest, attorneys' fees, and costs.

## COUNT IV
## CIVIL CONSPIRACY

43.    This is an action against Defendants for damages that exceed $15,000.00 for civil conspiracy.

44.    Plaintiffs reallege and incorporate herein by reference Paragraphs 1 through 25, above.

45.    Defendants acted in concert in conspiring to abuse the rights and interests of Plaintiffs inherent in their investing relationship with the Bank by committing unlawful, overt acts and omissions.

46.    As a direct and proximate result of Defendants' actions, Plaintiffs have been damaged.

**WHEREFORE,** Plaintiffs demand judgment against Defendants for compensatory damages, reserving the right to seek punitive damages at a later date upon a proper proffer, prejudgment interest, attorneys' fees, and costs.

## DEMAND FOR TRIAL BY JURY

Plaintiffs demand a trial by jury of all claims so triable.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on the **12th day of November, 2010,** I electronically filed the foregoing with the Clerk of the Court by using the ECF system which will send a Notice of Electronic Filing to all ECF-registered counsel of record.

s/ Tucker H. Byrd
Tucker H. Byrd
Florida Bar No. 381632
J. Carlos Real
Florida Bar No. 012869
*Attorneys for Plaintiffs*
**MORGAN & MORGAN, P.A.**
20 North Orange Avenue, Suite 1600
Orlando, FL 32801
Telephone: (407) 420-1414
Facsimile: (407) 418-2048
Email: TByrd@BusinessTrialGroup.com
Email: CReal@BusinessTrialGroup.com

## SCHEDULE "A"

| PLAINTIFF | INVESTMENT |
|---|---|
| Mike Fogel | $500,010.00 |
| Danny Anderson | $199,995.00 |
| Brian Buckley | $325,005.00 |
| Jeremy Burr | $100,005.00 |
| Rick Dalrymple | $197,490.00 |
| Insurance Office of America, Inc. | $500,002.50 |
| Jeff Lagos | $250,000.00 |
| John S. Lahey | $250,005.00 |
| Mary Lawless | $100,005.00 |
| Mark Manfre | $101,325.00 |
| Rod Morton | $ 50,002.50 |
| Herman Peery | $250,005.00 |
| Dale S. Perry | $100,005.00 |
| Heath Ritenour | $1,000,005.00 |
| John Ritenour | $2,000,002.50 |
| RTRM, LLC | $100,005.00 |
| Thomas Scalise | $150,000.00 |
| Wesley D. Scovanner | $249,750.00 |
| Jerry Senkarik | $100,005.00 |
| Keith Sutton & Michael Sutton | $500,002.50 |
| TAJS Investments, LLC | $100,005.00 |
| **Total Investment by Plaintiffs** | **$7,123,630.00** |